J-S01034-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ADOPTION OF: N.B.P., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: D.E.P., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1168 WDA 2025 |

Appeal from the Order Entered August 20, 2025
In the Court of Common Pleas of Westmoreland County Orphans' Court
at No(s):  024 of 2025

| | | |
|---|---|---|
| IN RE: ADOPTION OF: D.T.P., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF:  D.E.P., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1169 WDA 2025 |

Appeal from the Order Entered August 20, 2025
In the Court of Common Pleas of Westmoreland County Orphans' Court
at No(s):  025 of 2025

BEFORE:   BOWES, J., PANELLA, P.J.E., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:                **FILED: JULY 15, 2026**

The present matter, in which D.E.P. (Father) appeals from the August 20, 2025, orders that involuntarily terminated his parental rights to his biological sons, five-year-old N.B.P. and twenty-one-month-old D.T.P. (collectively, "Children"), returns to this Court upon the orphans' court's post-

---

[*] Former Justice specially assigned to the Superior Court.

remand completion of a 23 Pa.C.S.A. § 2511(b) analysis evaluating the bond, if any, between himself and each child and whether termination of his parental rights is in children's best interests.[1]  With the aid of the orphans' court's complete Section 2511(a) and (b) analyses explaining and supporting its order for the involuntary termination of Mother's and Father's parental rights, we have reviewed the record and affirm on the basis of the opinion authored by the Honorable Jim Silvis.

In our prior memorandum decision remanding and retaining panel jurisdiction, we set forth the facts and procedural history relevant to Father's appeal and discussed fully the evidence admitted at the Termination of Parental Rights Hearing, such that we incorporate our prior memorandum by reference.  We turn, then, to the issues Father raises for our consideration:

> 1.    Did the trial court abuse its discretion and/or err as a matter of law by finding, pursuant to 23 Pa.C.S.A. § 2511(b), that a termination of parental rights would best serve the

_____

[1] We observed in our prior memorandum decision that the orphans' court twice scheduled a formal bonding/attachment assessment between the parents and children, and parents failed to show on both occasions.  The record, however, contained other evidence, including expert testimony, of a loving bond or attachment between Mother and elder child N.B.P., albeit an insecure one because Mother had failed to nurture and consistently offer it due to her dependency on methamphetamine and amphetamine.  Therefore, we remanded to the orphans' court "to conduct the requisite needs and welfare analysis under Section 2511(b), with particular reference to both the child-biological parent bond and the child-current foster parent bond, before reaching the decision of whether to terminate parent's parental rights." ***Adoption of N.B.P.***, --- A.3d ----, 2026 WL 775748 (Pa. Super. filed Mar. 19, 2026);

developmental, physical, and emotional needs and welfare of the minor children[?]

2.    Pursuant to 23 Pa.C.S.A. § 2511(b), did the trial court abuse its discretion and/or err as a matter of law by not evaluating in its trial court opinion the bond between the parents and minor children, and whether a necessary and beneficial parental bond exists[?]

3.    Pursuant to 23 Pa.C.S.A. § 2511(b), did the trial court abuse its discretion and/or err as a matter of law by not evaluating in its trial court opinion whether severing the parental bond would cause the minor children extreme emotional consequences[?]

Brief for D.P. (Biological Father), at 4.

Our standard of review in this context is well-established:

In cases concerning the involuntary termination of parental rights, appellate review is limited to a determination of whether the decree of the termination court is supported by competent evidence.  When applying this standard, the appellate court must accept the trial court's findings of fact and credibility determinations if they are supported by the record.  Where the trial court's factual findings are supported by the evidence, an appellate court may not disturb the trial court's ruling unless it has discerned an error of law or abuse of discretion.

An abuse of discretion does not result merely because the reviewing court might have reached a different conclusion or the facts could support an opposite result.  Instead, an appellate court may reverse for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will.  This standard of review reflects the deference we pay to trial courts, who often observe the parties first-hand across multiple hearings.

In considering a petition to terminate parental rights, a trial court must balance the parent's fundamental right to make decisions concerning the care, custody, and control of his or her child with the child's essential needs for a parent's care, protection, and support. Termination of parental rights has significant and permanent consequences for both the parent and child.  As such, the law of this Commonwealth requires the moving party to

> establish the statutory grounds by clear and convincing evidence, which is evidence that is so clear, direct, weighty, and convincing as to enable a trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue.

*Interest of M.E.*, 283 A.3d 820, 829-30 (Pa. Super. 2022) (cleaned up).

The Adoption Act governs the involuntary termination of parental rights through a statutory scheme at 23 Pa.C.S.A. § 2511 requiring orphans' courts to apply a bifurcated analysis, beginning with a focus on Section § 2511(a)(1)-(11), which present the "eleven enumerated grounds" of parental conduct that may warrant termination. *Id.* at 830. If the orphans' court determines the petitioner has established, by clear and convincing evidence, grounds for termination under one of these subsections, it must then assess the petition pursuant to Section 2511(b), which requires an orphans' court to "give primary consideration to the developmental, physical, and emotional needs and welfare of the child." *In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013). A child's emotional needs and welfare include intangibles such as love, comfort, security, and stability. *Interest of K.T.*, 296 A.3d 1085, 1105 (Pa. 2023).

"[I]f the child has any bond with the biological parent, the court must conduct an analysis of that bond, which is not always an easy task." *K.T.*, 296 A.3d at 1105-06. This Court has acknowledged our high court's directive that a Section 2511(b) inquiry must include consideration for the bond between the parent and the child. *In re Adoption of A.G.R.*, (non-precedential decision) 351 A.3d 196 at **8, No. 563 MDA 2025, 2025 WL

3089947 (Pa. Super. filed November 5, 2025) [2]; *See also Interest of R.F.*, 345 A.3d 283, 289 (Pa. Super. 2025) (vacating termination decree and remanding where orphans' court failed to address both the testimonial evidence indicating that a parent-child bond may exist between the mother and R.F. and the effect that termination would have on him). Furthermore, "orphans' courts 'must consider whether the Children are in a pre-adoptive home and whether they have a bond with their foster parents.'" *Interest of K.T.*, 296 A.3d at 1106 (internal citation omitted).

Father's three issues coalesce to focus exclusively on Section 2511(b), as he claims in each that the termination of his parental rights would sever a necessary and beneficial bond between himself and N.B.P., causing in his older son extreme emotional consequences that would undermine his son's needs and welfare. [3] Specifically, he alludes to the testimony of Dr. Mahady stating that N.B.P. was particularly connected to his Mother but also connected to Father, calling him, "Daddy." N.T. 6/25/25, at 82. This Court's prior memorandum decision remanding the matter to the orphans' court to provide a Section 2511(b) bonding assessment discussed at length Dr. Mahady's best interests analysis regarding N.B.P.

---

[2] *See* Pa.R.A.P. 126(b) (providing that unpublished nonprecedential memorandum decisions of the Superior Court filed after May 1, 2019, may be cited for their persuasive value).

[3] At the outset, we note that Father's failure to respond to two attempts to schedule a formal bonding assessment, on April 14, 2025, and April 22, 2025, frustrated the Agency's ability to conduct a formal assessment.

The orphans' court's post-remand opinion recounts the testimony of both Child psychologist Carol Patterson and Dr. Christine Mahady, who specializes in trauma and attachment assessments.[4] Ms. Patterson was contacted to conduct a bonding/attachment assessment between parents and N.B.P. Specifically, Ms. Patterson discussed her observations of the parent-child interactions and opined that "she could not render a determination as to whether a positive bond existed between the child and his parents. Based on the child's age and having lived with his parents for his first four years, a bond would be expected." Post-remand TCO, 5/7/26, at 19 (unpaginated). It was her professional opinion, however, that "a bond had not formed between the parents and the child. It was noted that some evidence of a bond existed when the child stated he wanted to live with Mother, and "Patterson recommended that a full bonding assessment should occur between the parents and the child." Post-Remand The TCO at 19.

The orphans' court's post-remand opinion also considered Dr. Mahady's bonding/attachment assessment between the child and his parents, an assessment this Court discussed extensively in our previous memorandum decision. Dr. Mahady stated that N.B.P.'s removal from the family home was traumatic, there was a connection between the child and both his Mother, who

_____

[4] This Court's prior memorandum engaged in a broad discussion of Dr. Mahady's testimony addressing her assessments of the "trauma and attachment" issues between N.B.P. and his biological parents.

was kind and patient with him, and his Father, although Father typically spent more time as caregiver to the infant D.T.P. at the visits.

Nevertheless, Dr. Mahady acknowledged that attachment work stopped because the parents missed too many scheduled visits. The trial court's post-remand opinion notes Dr. Mahady's testimony that it would have been unfair to N.B.P. to put in the work to increase attachment if the parents were not going to be consistent. The child needed permanency that parents were not giving. TCO at 19. The orphans' court summarized Dr. Mahady's observations on the consequences of parents' poor attendance record, which was to state that "for the attachment work to be effective, the parents would need to be sober and committed to visiting with the child, which neither parent had demonstrated during the three months that [she] had worked with the family." TCO at 19-20.

The orphans' court responds in its post-remand Pa.R.A.P. 1925(a) opinion that testimonial evidence from both psychologist, Carol Patterson, and family therapist, Dr. Christine Mahady, bore heavily on the court's best interests of the child inquiry, including the parent-child bond at stake, and guided the court to its determination. In this regard, the orphans' court has supplemented its initial Rule 1925(a) opinion with a complete discussion of the parent-child bonding evidence as it pertains to both children and offers its Section 2511(b) determination that while it may be in the best interests of the children to permit continued parent-child contact in a controlled supervised setting, it is also in their best interests for the court to terminate biological

parents' parental rights so that foster parents, in whose care children are thriving, may proceed with filing petitions for adoption pursuant to instructions provided in the orphans' court's April 21, 2026, order terminating parental rights.[5]

We discern no error with the orphans' court's order and opinion as it relates to the bond between biological parents—Father in this case—and children, the bond between foster parents and children, and the comparative analysis of the bonds that favors termination of parental rights and completion of adoption by foster parents, who have been mindful not to sever the children's familial connections, as described above. Accordingly, we affirm the order below.

Order Affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 7/15/2026

_____

[5] Notably, the orphans' court views favorably foster parents' willingness to allow children to continue supervised contact with biological parents. **See** TCO, at 22.